O

<mark>NO JS-6</mark>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRITAPORN SIRISUP, an individual; and SIRISUP, INC., a California corporation, | ) ) ) ) | Case No. CV 13-07246 DDP (PJWx) **AMENDED ORDER (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; (2) GRANTING** |
| Plaintiffs, | ) ) ) | **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, TREATED AS MOTION FOR SUMMARY JUDGMENT; AND** |
| v. | ) ) | **(3) DISMISSING DEFENDANTS' COUNTERCLAIMS OTHER THAN** |
| IT'S THAI, L.L.C., a California limited liability company; IT'S THAI CANTEEN, L.L.C., a California limited liability company; RURK SUPTHONG, an individual; SIRIN RANGSIYACHAT, an individual, | ) ) ) ) ) ) ) | **COUNTERCLAIM 6**  [Dkt. Nos. 63 and 79] |
| Defendants. | ) ) | |

Presently before the Court are (1) Plaintiffs' Motion for

Summary Judgment or, in the Alternative, for an Order Treating

Specified Facts As Established; and (2) Defendants' Motion for

Judgment on the Pleadings.  (Dkt. Nos. 63 and 79.)  Having heard

oral arguments and considered the parties' submissions, the Court

adopts the following order.

///

## I. BACKGROUND

In 2006, Plaintiff Tritaporn Sirisup ("Tritaporn") was working as a manager at a restaurant called "Pimai Thai Cuisine," ("the Restaurant") in Los Angeles, California.  (Decl. Tritaporn Sirisup ISO Mot. Summ. J. ¶3 ("Decl. Tritaporn").)  The Restaurant was owned at that time by Damrong Plobmuang and Sirirat Hongthong (Defendant Rurk Supthong's former wife).  (Defs.' Opp'n Mot. Summ. J. Ex. 2. ("Defs. Opp'n MSJ").)  Defendant Rurk Supthong ("Supthong") contends he only had a community property interest in the Restaurant.  (Defs. Opp'n MSJ Decl. Rurk Supthong ¶4.)  The original Restaurant owners considered officially changing the name of the Restaurant from "Pimai Thai Cuisine" to "Pimai It's Thai," but the State Board of Equalization did not approve the change.  (Defs. Opp'n MSJ Ex. 2.)  Instead, in 2006 or early 2007, the signs outside the Restaurant were changed from "Pimai" to "Pimai It's Thai."  (Pls.' Mot. Summ. J. Ex. 2, p. 22-24 ("Pls. MSJ"); Pls.' Req. Judicial Notice ISO MSJ Ex. 1, p. 40 ("Pls. Req. MSJ"); Decl. Linna Duong ¶¶ 5-7; Decl. Jay Hong ¶¶ 5-7.)

In August 2008, Plaintiff Tritaporn and two other purchasers bought the Restaurant from the original owners, including Defendant Supthong.  (Pls. MSJ Ex. 3; Decl. Tritaporn ¶5.)  The Bulk Sale Escrow Instructions stated that the purchase price of the Restaurant included the "goodwill/trade name" of the Restaurant as well as a "covenant not to compete."  (Pls. MSJ Ex. 3.)

In September 2008, Defendants Rurk Supthong and Sirin Rangsiyachat (Supthong's current wife and a former Restaurant employee, "Sirin"), along with a third party, formed a company called "It's Thai, LLC."  (Pls. MSJ Exs. 5, 6 p.18, 21; Defs. Opp'n

MSJ at 1; Decl. Sirin Rangsiyachat ¶3.)   Thereafter, Defendants Supthong, Sirin, and It's Thai, LLC opened two restaurants: "It's Thai Hometaurant" in 2008 and "It's Thai Noodles N' More" in 2010. (Pls. MSJ Ex. 6, p. 57.)   Defendant It's Thai Canteen, LLC was formed in 2012 by Defendant Sirin and a third party; it runs a restaurant called "It's Pho."   (Defs. Opp'n MSJ Ex. 19, 20.)

In early July 2011, Plaintiffs submitted an application to register "Pimai It's Thai" as a service mark with the United States Patent and Trademark office ("U.S. PTO").   (Defs. Opp'n MSJ Ex. 17.)   Around late July 2011, Plaintiffs allege they sent a cease and desist letter to Defendants upon learning about Defendants' new restaurants, but the parties were unable to informally resolve the issue.   (Pls. MSJ at 4.)

In September 2011, Defendant It's Thai, LLC filed applications to register "It's Thai," "It's Thai Hometaurant," and "It's Thai Noodle N More" as service marks with the U.S. PTO.   (Defs. Opp'n MSJ Ex. 23; Pls. Req. MSJ Ex. 8.)

In October 2011, Plaintiff Tritaporn filed a complaint against Defendants It's Thai, LLC and Supthong in the Los Angeles Superior Court.   (Defs. Mot. J. Pleadings Ex. H ("Defs. MJP").)   Plaintiffs alleged breach of contract, intentional misrepresentation, intentional and negligent interference with prospective economic advantage, and common law and California Business and Professions Code unfair competition.   (Id.)   These claims arose from Defendants' business activities after the sale of the Restaurant, which Plaintiff alleged violated the Escrow Instructions, as well as the dispute over the trade names of Defendants' business and

1  restaurants, which Plaintiff found infringed her trade name.  (Id.
2  at 5-6, 12-14.)

3      In May 2012, Defendant It's Thai, LLC filed an Opposition
4  ("opposition action") to Plaintiff Tritaporn's application for a
5  trademark with the U.S. PTO's Trademark Trial and Appeal Board
6  ("USTTAB").  (Pls. MSJ Ex. 9.)  The ownership and registration
7  dispute centered on when the phrase "It's Thai" was used by the
8  respective parties and the potential for confusion between the
9  different uses of the phrase.  (Id.)  The parties suspended the
10 opposition action pending the outcome of the Superior Court case.
11 (Pls. MSJ at 5.)

12     In October 2012, the parties, including current Defendant
13 Sirin who was not a party to the California case, entered into a
14 settlement agreement to resolve the entire dispute except for the
15 matters related to the trademark and trade name.  (Defs. Opp'n MSJ
16 Ex. 16 §§ 10, 11; Defs. MJP Ex. B §§ 10, 11.)  The settlement
17 agreement left the trademark issue to be "litigated out to its
18 conclusion" in the U.S. PTO.  (Defs. Opp'n MSJ Ex. 16 §11(a); Defs.
19 MJP Ex. B §11(a).)  Another clause in the contract prevented the
20 parties from opening new restaurants until the resolution of the
21 U.S. PTO litigation, but it expressly excluded It's Thai
22 Hometaurant, It's Thai Noodles & More and It's Pho from the
23 prohibition.  (Defs. Opp'n MSJ Ex. 16 §11(b); Defs. MJP Ex. B
24 §11(b).)

25     Then in May 2013, Plaintiff moved the USTTAB to resume the
26 opposition action after the Superior Court settlement, which the
27 USTTAB granted at the end of June 2013.  (Defs. MJP Exs. D and E.)
28 In early July 2013, Defendant It's Thai, LLC voluntarily withdrew

1   its Opposition and the USTTAB dismissed the action with prejudice

2   at the end of July 2013. (Defs. Opp'n MSJ Ex. 22; Pls. MSJ Ex. 10.;

3   Defs. MJP Ex. F and G.)

4       In September 2013, the U.S. PTO approved and registered

5   Plaintiff Tritaporn's service mark "Pimai It's Thai." (Defs. Opp'n

6   MSJ at Ex. 17.)  In June 2014, the U.S. PTO denied Defendants'

7   application for registration of the "It's Thai" mark. (Pls. MSJ Ex.

8   11.)  Defendants' "It's Thai Hometaurant" mark was registered in

9   July 2012.  (Defs. Opp'n MSJ Ex. 23.)

10      In October 2013, right after the end of the actions before the

11  U.S. PTO, Plaintiffs Tritaporn and Sirisup, Inc. filed the current

12  case against Defendants Supthong, Sirin, It's Thai, LLC, and It's

13  Thai Canteen, LLC.  (Compl.)  Plaintiffs now allege federal service

14  mark infringement, federal unfair competition, false designation of

15  origin, dilution, trade dress infringement, state common law

16  service mark infringement, and unfair competition under the

17  California Business and Professions code.  (Id.)  Defendants

18  responded with similar counterclaims.  (Answer, Countercls.)  At

19  the close of discovery, Plaintiffs have filed a Motion for Summary

20  Judgment, discussing primarily the federal service mark claim.

21  (Pls. MSJ.) Defendants filed a Motion for Judgment on the

22  Pleadings, arguing that the previous state court settlement

23  precludes the instant action, that Plaintiffs failed to exhaust

24  administrative remedies, and that Plaintiffs fail to state a claim

25  upon which relief can be granted.  (Defs. MJP.)

26  ///

27  ///

28  ///

**II. LEGAL STANDARDS**

    **A.   MOTION FOR SUMMARY JUDGMENT**

      Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 242 (1986).  If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 323.

      Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome

1  of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248.
2  There is no genuine issue of fact "[w]here the record taken as a
3  whole could not lead a rational trier of fact to find for the
4  nonmoving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>
5  <u>Corp</u>., 475 U.S. 574, 587 (1986).

6       It is not the court's task "to scour the record in search of a
7  genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275,
8  1278 (9th Cir.1996).  Counsel has an obligation to lay out their
9  support clearly.  <u>Carmen v. San Francisco Sch. Dist</u>., 237 F.3d
10 1026, 1031 (9th Cir.2001).  The court "need not examine the entire
11 file for evidence establishing a genuine issue of fact, where the
12 evidence is not set forth in the opposition papers with adequate
13 references so that it could conveniently be found."  <u>Id.</u>

14      **B.   MOTION FOR JUDGMENT ON THE PLEADINGS**

15      A party may move for judgment on the pleadings when the
16 pleadings have closed and the motion will not delay trial.  Fed. R.
17 Civ. P. 12(c)).  Judgment on the pleadings is granted if the moving
18 party would receive judgment as a matter of law even if all
19 allegations in the non-moving party's pleadings were assumed to be
20 true.  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896
21 F.2d 1542, 1550 (9th Cir. 1990).  "Judgment on the pleadings is
22 proper when there are no issues of material fact, and the moving
23 party is entitled to judgment as a matter of law." <u>Gen. Conference</u>
24 <u>Corp. of Seventh-Day Adventists v. Seventh-Day Adventist</u>
25 <u>Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989).
26 Allegations of fact by the nonmoving party are accepted as true and
27 construed in the light most favorable to that party.  <u>Id.</u>  Judgment
28 on the pleadings is a judgment on the merits.  <u>Id.</u>

1    When considering a motion for judgment on the pleadings, a

2  district court generally may not go beyond the pleadings to resolve

3  an issue.  Hal Roach Studios, Inc., 896 F.2d at 1550.  But a court

4  may consider documents attached to the complaint or incorporated by

5  reference because such documents are treated as part of the

6  complaint.  See, e.g., Branch v. Tunnell, 14 F.3d 449, 454 (9th

7  Cir. 1994), overruled on other grounds, 307 F.3d 1119, 1127 (9th

8  Cir. 2002).  Similarly, where a complaint mentions or quotes from a

9  document, a court may consider portions of the document that are

10  not quoted in the complaint.  Anderson v. Clow (In re Stac Elecs.

11  Sec. Litig.), 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); Branch, 14

12  F.3d at 453-54.

13  **III. DISCUSSION**

14       **A.    Conversion of Defendants' Motion for Judgment on the
             Pleadings into a Motion for Summary Judgment**
15

16    Defendants have filed a Motion for Judgment on the Pleadings.

17  However, the motion contains numerous exhibits that were not

18  attached or incorporated by reference to the complaint, or the

19  answer.  (Compare Defs. MJP Ex. A-I with Compl., Answer.)  Thus,

20  Defendants' Motion is more properly viewed as a Motion for Summary

21  Judgment.  See Hal Roach Studios, Inc., 896 F.2d at 1550

22  ("[J]udgment on the pleadings is improper when the district court

23  goes beyond the pleadings to resolve an issue; such a proceeding

24  must properly be treated as a motion for summary judgment."); see

25  also Fed. R. Civ. P. 12(d); McGlinchy v. Shell Chem. Co., No. C-84-

26  0474 SC, 1985 WL 25738, at *2 (N.D. Cal. June 7, 1985)(finding the

27  court has discretion to treat a motion for judgment on the

28  pleadings as a motion for summary judgment and accept a party's

1  "extraneous" evidence).  Under Rule 12(d), if a party moving for

2  judgment on the pleadings relies on evidence outside the pleadings

3  and the court does not exclude such evidence, then the motion must

4  be treated as a motion for summary judgment and all parties "must

5  be given a reasonable opportunity" to respond to such a motion.

6  Fed. R. Civ. P. 12(d).

7       Plaintiffs here have filed their own Motion for Summary

8  Judgment at the close of discovery.  Defendants' Opposition to the

9  Plaintiffs' Motion for Summary Judgment contains essentially the

10  same arguments and evidence as are in Defendants' Motion for

11  Judgment on the Pleadings.  The Court finds that all parties have

12  had a reasonable opportunity to respond to the allegations and

13  evidence in the Motion for Judgment on the Pleadings that were not

14  incorporated or attached to the complaint.  Therefore, the Court in

15  its discretion will treat Defendants' Motion for Judgment on the

16  Pleadings as a Motion for Summary Judgment and consider the

17  exhibits attached.

18       **B.   The Settlement Agreement**

19       Defendants argue that the current litigation is barred under

20  the terms of a prior state court settlement agreement between

21  Plaintiffs and Defendants that included a general release of all

22  claims other than a "trademark/trade name" issue.  (Defs. MJP at 1-

23  4; Defs. Opp'n MSJ at 6-8.)  Under Defendants' interpretation of

24  the agreement, the exclusion of the trademark issue only excluded

25  the then-existing U.S. PTO litigation between the parties.  (Defs.

26  MJP at 2-3; Defs. Opp'n MSJ at 6-8; Defs. Reply Supp. Mot. J.

27  Pleadings at 2 ("Defs. Reply MJP").)

28

1    Plaintiffs respond that the settlement agreement more
2   generally "carved out" trademark claims from resolution in the
3   settlement.  (Pls. Opp'n Mot. J. Pleadings at 7-10 ("Pls. Opp'n
4   MJP"); Pls. Reply Br. Supp. Mot. Summ. J. at 7-9 ("Pls. Reply
5   MSJ").)  Plaintiffs read the settlement agreement to allow further
6   litigation in the U.S. PTO as well as in federal court over
7   trademark issues.  (Pls. Opp'n MJP at 8-9; Pls. Reply MSJ at 8.)

8    If the settlement agreement does in fact cover the current
9   litigation, then the Court cannot reach the other issues raised by
10  the parties in their motions for summary judgment, much less the
11  claims in the complaint and counterclaims.

12              **1.   Res Judicata**

13   Plaintiffs argue that Defendants cannot raise the defense of
14  res judicata now because Defendants did not raise res judicata in
15  their Answer.  (See Pls. Opp'n MJP at 6-7.)  Plaintiffs are correct
16  that Defendants did not raise res judicata in their Answer.  (See
17  Answer.)  Under Federal Rule of Civil Procedure 8(c)(1), a party
18  waives the affirmative defense of res judicata if it is not raised
19  in the party's responsive pleading.

20   However, notwithstanding res judicata, the settlement
21  agreement can still bar Plaintiffs' claims because the agreement is
22  now affirmatively argued to preclude the instant action in the
23  motions for summary judgment.  Cf. United States ex rel. Hall v.
24  Teledyne Wah Chang Albany, 104 F.3d 230 (9th Cir. 1997) (upholding
25  a federal district court's grant of summary judgment where the
26  parties had reached a prior state court settlement including a
27  "general release of all claims").
28  ///

1
2. **Interpreting the Settlement Agreement**

2      Federal courts apply "local law" when faced with questions of

3 enforcing and interpreting settlement agreements, even where "the

4 underlying cause of action is federal." See <u>United Commercial Ins.</u>

5 <u>Serv., Inc. v. Paymaster Corp.</u>, 962 F.2d 853, 856 (9th Cir. 1992).

6 "A settlement agreement is treated as any other contract for

7 purposes of interpretation." <u>Id.</u>  Under California law, a

8 contract's plain language governs its interpretation.  Cal. Civ.

9 Code § 1638.  In construing the language, "the intent of the

10 parties determines the meaning of the contract." See <u>United</u>

11 <u>Commercial Ins. Serv., Inc.</u>, 962 F.2d at 856 (citing Cal. Civil

12 Code §§ 1636, 1638).

13      Thus, the Court will examine the plain language of the

14 settlement agreement to ascertain the parties' intent and determine

15 the agreement's application to the case here.

16
3. **Language of the Settlement Agreement**

17      For the purposes of this case, the relevant portions of the

18 settlement agreement are  § 10 "Releases" and § 11 "Trademark Trade

19 Name Issue."  (Defs. MJP Ex. B; Defs. Opp'n MSJ Ex. 16.) Below is

20 the contractual language, with emphasis added to the relevant

21 particular parts:

22      10. RELEASES.

23          a.  **Except for the executory provisions of this**
**Agreement**, Tritaporn Sirisup, on behalf of herself and her
24 respective heirs, successors, assigns, officers, directors,
shareholders, employees, affiliates, members, general
25 partners and limited partners, **hereby fully release and**
**forever discharge** Rurk Supthong and It's Thai, LLC, and
26 each of them, and their heirs, successors, assigns,
employees, affiliates, officers, directors, shareholders,
27 general partners, limited partners, members, and attorneys
**from each and every claim, whether actual or potential,**
28 **whether known or unknown which Tritaporn Sirisup, does or**

**may presently have, own or hold against Rurk Supthong and It's Thai, LLC.**

b.   Except for the executory provisions of this Agreement, Rurk Supthong and It's Thai, LLC, and each of them, on behalf of themselves and their respective heirs, successors, assigns, officers, directors, shareholders, employees, affiliates, members, general partners and limited partners, hereby fully release and forever discharge Tritaporn Sirisup and her heirs, successors, assigns, employees, affiliates, officers, directors, shareholders, general partners, limited partners, members, and attorneys from each and every claim, whether actual or potential, whether known or unknown, which Rurk Supthong and It's Thai, LLC, and/or any of them, do or may presently have, own or hold against Tritaporn Sirisup.

c.   Each party hereto hereby acknowledges that they have read and understand § 1542 of the California *Civil Code,* which provides as follows:
"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, must have materially affected his or her settlement with the debtor."
**Except for the executory provisions of this Agreement, each party hereto waives and relinquishes any and all rights and benefits which they presently have or may have in the future under § 1542 of the California *Civil Code*,** or under any law of any state or territory which is similar, comparable, or equivalent to §1542 of the California *Civil Code*. Each party hereto hereby acknowledges that they are aware that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to all or any part of the subject matter of the release as contained in this Agreement, but that **it is the clear and unequivocal intention of each party hereto to hereby effectuate, fully, finally, and forever, the settlement, release, and discharge of each and every claim specifically or generally referred to in this Agreement, and that in the furtherance of such intention, any and all releases provided herein shall be and remain in effect as a full and complete general release, notwithstanding the discovery and/or the existence of any additional or different facts.** The parties assume the full risk of discovery or more complete understanding of any facts, events, law or thing whatsoever which, if presently known or correctly and fully understood, would have affected the releases
herein.

11. TRADEMARK TRADE NAME ISSUE.

a.   **The releases in section 10 of this Agreement do not apply to the trademark/trade name issue that is at**

**issue in the Superior Court Action. The trademark trade name issue will not be resolved as a result of this Agreement**. Tritaporn Sirisup, Rurk Supthong, and It's Thai, LLC agree that **the trademark trade name issue will be litigated out to its conclusion in the United States Patent and Trademark Office** (hereinafter "USPTO").

b.   Tritaporn Sirisup, Rurk Supthong, and It's Thai, LLC agree that, **up until the resolution of the trademark/trade name case before the USPTO**, Tritaporn Sirisup, Rurk Supthong, It's Thai, LLC, SIRIN RANGSIYACHAT, any entity that SIRIN RANGSIYACHAT and the parties hereto own an interest in, and any of the parties' respective heirs, successors, assigns, officers, directors, shareholders, employees, affiliates, members, associates, general partners and limited partners own interest in will not open up a new restaurant or dining establishment with "It's Thai" in its name within a four (4) mile radius of where Tritaporn Sirisup's restaurant "Pimai It's Thai" currently is located. This excludes the three businesses "It's Thai Hometaurant," "It's Thai Noodles & More," and "It's Pho," which are already associated with Rurk Supthong and/or It's Thai, LLC.

(Defs. MJP at Ex. B; see also Pls. Opp'n MJP at 7-8; Pls. Reply MSJ at 7-8.)

### 4.   The General Release

The general release section states that Plaintiff Sirisup and any related entity (such as Plaintiff Sirisup, Inc.) released "from each and every claim, whether actual or potential, whether known or unknown which Tritaporn Sirisup, does or may presently have, own or hold against Rurk Supthong and It's Thai, LLC."  The reverse release applies to Defendants Rurk Supthong and It's Thai, LLC, and their related entities, as to claims against Plaintiff Tritaporn.

The parties' intent is also specifically identified in the agreement: "it is the clear and unequivocal intention of each party hereto to hereby effectuate, fully, finally, and forever, the settlement, release, and discharge of each and every claim specifically or generally referred to in this Agreement."  Thus, based on the general release, all claims and counterclaims in this

13

1    current litigation are barred unless those claims are within the

2    scope of the § 11 "carve out" for the "trademark trade name issue."

3                    **5.   The Trademark Carve Out**

4        Section 11 states that the general releases of Section 10 "do

5    not apply to the trademark/trade name issue that is at issue in the

6    Superior Court Action. The trademark trade name issue will not be

7    resolved as a result of this Agreement." Thus, if any of the

8    current claims or counterclaims fall into this exception – are part

9    of the "trademark/trade name issue" – then the settlement agreement

10   does not necessarily bar the claim. But there is a qualifying

11   statement to this carve out: the parties agreed "that the trademark

12   trade name issue will be litigated out to its conclusion in the

13   United States Patent and Trademark Office." The parties disagree

14   on what this means.

15       Defendants argue that this statement simply meant that pre-

16   existing litigation between the parties in the U.S. PTO about the

17   trademark and trade names – the opposition action – would be

18   exempted from the settlement agreement and could be litigated in

19   the U.S. PTO after satisfaction of the settlement agreement.

20   (Defs. Opp'n MSJ at 7-8.)

21       Plaintiffs argue that this statement does not mean that the

22   litigation had to be "solely" before the U.S. PTO and deny that the

23   language refers to pre-existing U.S. PTO litigation. (Pls. Reply

24   MSJ at 8; Pls. Opp'n MJP at 8-10.) It also does not preclude, they

25   say, "filing a law suit in federal court prior to or concurrently

26   with 'litigating out' the trademark and trade name issues to U.S.

27   PTO." (Pls. Reply MSJ at 8.) In fact, "Plaintiffs still intend to

28   seek cancellation of Defendants' other trademarks 'It's Thai

                                    14

1  Hometaurant' and 'It's Thai Noodles N' More' upon prevailing in
2  this instant action in front of the U.S. PTO's tribunal Trademark
3  Trial and Appeals Board." (Id.)

4      The problem for Plaintiffs is that the infringement and other
5  related claims brought in this case are derivative of some of the
6  claims first brought in the California state court action,
7  particularly the unfair competition and interference with
8  prospective economic advantage claims.  (See Defs. MJP Ex. H.)
9  Further, the heart of the prior and current infringement claims
10  between these parties is the "trademark/trade name issue" – that
11  is, the infringement alleged is the use by both parties of trade
12  names involving "it's Thai" in some way.

13      This "trademark/trade name" issue began in the U.S. PTO with
14  the dueling trademark registrations of Plaintiffs and Defendants.
15  Plaintiffs filed the California state court action against
16  Defendants, alleging claims arising from the dispute over the
17  restaurant names.  Defendants filed an opposition to Plaintiffs'
18  trademark registration.  That opposition was suspended by the
19  USTTAB pending the outcome of the state court lawsuit.  And as the
20  Plaintiffs explain in their papers: "Upon dismissal of the Superior
21  Court Action after reaching the Settlement, Plaintiffs filed a
22  motion to resume, and USTTAB [the Trademark Trial and Appeal Board]
23  granted their motion on June 25, 2013." (Pls. Opp'n MJP at 3.)

24      The USTTAB opposition action is exactly the litigation
25  contemplated by the language of the settlement agreement.  The
26  opposition action would determine ownership and registration of the
27  disputed trademark "Pimai It's Thai" and would resolve the
28  "trademark/trade name" issue between the parties.  Defendants did

15

withdraw their opposition to Plaintiff's trademark application on July 3, 2013, thus ending the litigation.  Plaintiffs received their trademark, as well as the agreed upon settlement damages of $26,000.  (See Defs. Opp'n MSJ at Ex. 17; Defs. MJP at Ex. B.) Defendants received two out of their three applied-for trademarks. This fully and finally resolved the trademark issues between these parties: the trademark trade name issue *was* "litigated out to its conclusion" in the U.S. PTO.

Any other claims the parties wanted to carve out – including federal trademark infringement or further debate over the propriety of restaurant locations – could have been reserved by the parties in the settlement agreement as they did with the on-going U.S. PTO trade name issue.  However, the parties did not do that, and Plaintiffs' belated attempts to re-write their settlement agreement are unsuccessful.

**C.   Counterclaims**

The parties' papers do not address Defendants' counterclaims directly.  However, the Court takes notice of the fact that all but one of the counterclaims relate to the same trademark and competition issues that are covered by the parties' settlement agreement and thus are precluded from litigation.  (See Dkt. No. 37 Answer & Counterclaims.)  The sole exception is counterclaim six for common law breach of contract, based on Plaintiffs' alleged violation of the settlement agreement by filing this lawsuit.  (Id. at 18.)  This counterclaim is necessarily not covered by the settlement agreement nor precluded by it.

The Court finds that Defendants had notice of and opportunity to develop an argument against a potential challenge to their

1  counterclaims because Defendants argued that the settlement
2  agreement bars claims arising before or from the dispute covered by
3  the agreement.  See Norse v. City of Santa Cruz, 629 F.3d 966, 971-
4  72 (9th Cir. 2010)(party requires notice before court can sua
5  sponte grant summary judgment against them); United States v.
6  Grayson, 879 F.2d 620, 625 (9th Cir. 1989)(same; "A district court
7  may grant summary judgment without notice if the losing party has
8  had a full and fair opportunity to ventilate the issues involved in
9  the motion."(internal quotation omitted)).  Here, Defendants had
10  notice of the challenge to their counterclaims because it is
11  precisely the same challenge Defendants brought to Plaintiffs'
12  claims.  Thus, the Court holds that Defendants' counterclaims —
13  other than counterclaim six for breach of contract — are also
14  barred by the settlement agreement and are hereby dismissed.
15  **IV. CONCLUSION**
16       For the foregoing reasons, the Plaintiffs' Motion for Summary
17  Judgment is DENIED. The Defendants' Motion for Judgment on the
18  Pleadings is converted to a cross Motion for Summary Judgment and
19  is GRANTED.  Defendants' counterclaims are DISMISSED on the Court's
20  own review, as discussed above, with counterclaim six for breach of
21  contract remaining.
22
23  IT IS SO ORDERED.
24
25
26  Dated: October 21, 2015
27                                  DEAN D. PREGERSON
                                   United States District Judge
28

17